EVAN S. COHEN, ESQ. (SBN 119601)
esc@manifesto.com
1180 South Beverly Drive. Suite 510
Los Angeles, CA 90035-1157
Phone: (310) 556-9800

BYRNES HIRSCH P.C.
Bridget B. Hirsch (SBN 257015)
bridget@byrneshirsch.com
2272 Colorado Blvd., #1152
Los Angeles, CA 90041
(323) 387-3413

Attorney for Plaintiff ELOHIM EPF USA, INC.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELOHIM EPF USA, INC., a California corporation,<br><br>             Plaintiff,<br><br>v.<br><br>PONDANET, INC., a Delaware corporation d/b/a US Karaoke; ENTERMEDIA CO., LTD., a Korean corporation; SUNG DOO LEE, an individual; and DOES 1-105, inclusive,<br><br>             Defendants. | Case No.: 8:19-cv-00349-SVW-KES<br><br>Hon. Stephen V. Wilson<br><br>**PLAINTIFF'S OPPOSITION TO ENTERMEDIA CO., LTD.'S MOTION TO QUASH SERVICE OF SUMMONS**<br><br>Date: July 15, 2019<br>Time: 1:30 p.m.<br>Courtroom: 10A<br><br><br>Complaint filed: Feb. 22, 2019<br>Current trial date: Sep. 10, 2019 |

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

In this copyright infringement action involving digital streaming in the karaoke industry, Plaintiff Elohim EPF USA, Inc. ("Elohim") has sued Pondanet, Inc., a corporation based in California, and EnterMedia Co., Ltd. ("EnterMedia"), a Korean company. Pondanet and EnterMedia have a very close relationship, to say the least. In the words of EnterMedia, the office of Pondanet, in this district, is EnterMedia's "branch office," and all United States consumers "must" contact Pondanet – and *only* Pondanet – with any issues or problems with EnterMedia's products. The two companies sell and distribute the same infringing karaoke works through the identical software applications (or "Apps").

The facts presented herein establish that Pondanet satisfies all of the requirements necessary to be EnterMedia's "general manager," and plaintiff has properly served EnterMedia by serving Pondanet. Contrary to the scant authority presented by EnterMedia, there is no requirement that Pondanet be "an exclusive distributor" of EnterMedia, nor is there a requirement that Pondanet be a "subsidiary" of EnterMedia. There is also no requirement that service be made pursuant to the Hague Convention.[1]

With regard to EnterMedia's position that plaintiff "only served a clerical employee," the Ninth Circuit has held that service on a receptionist *is* sufficient if that person was "the only employee in the office when the process server arrived, demonstrating that more than minimal responsibility was assigned to her." *Direct Mail Spec. v. Eclat Computerized Tech*, 840 F.2d 685 (9th Cir. 1988).

---

[1] Where, as here, service was validly performed under California law, there is no need to serve papers in accord with the Hague Convention. *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 707-08 (1988).

## II. STATEMENT OF FACTS.

### A. Background of the Dispute

This is a copyright infringement case involving the unlicensed use of musical compositions in defendants' karaoke-related businesses, primarily in digital streaming. Plaintiff Elohim is a music publisher with a large catalogue of music written and composed by Korean songwriters, and Elohim is the music publisher of those compositions in the United States.

Pondanet is a California corporation located in Anaheim, California, and is in the business of importing karaoke machines and other equipment from defendant EnterMedia, which is a Korean corporation. The two companies also engage in a large operation involving the digital streaming of recordings, including plaintiff's compositions, via an identical App, with identical catalogues of Korean songs.[2] In the FAC, plaintiff has identified forty-five registered compositions infringed by defendants. Defendants have no licenses to exploit any of the compositions in any such activities.

By defendants' own specific statements (and not "generalized statements"), the two corporations are closely related, as discussed herein, and EnterMedia routinely and openly refers to Pondanet's Anaheim office as EnterMedia's "branch office." Moreover, EnterMedia advises American consumers that any issues that arise with EnterMedia's products "must" be referred to, and handled by, Pondanet in California. Declaration of Evan S. Cohen ("Cohen Decl."), Exhibits A and C.

### B. Procedural History.

Plaintiff filed this case on February 22, 2019. Plaintiff served the Complaint upon Pondanet and defendant Lee on March 1, 2019, by substitute service, on Joseph Ahn, the general manager of Pondanet. Pondanet and Lee answered the Complaint on

---

[2] The EnterMedia App is called "MagicSing," and the Pondanet App is called "MyStage." There is no apparent difference between the two Apps (*see* Cohen Decl., Exhibits E and F), which indicates that Pondanet obtained the software from EnterMedia, and both companies work closely together to maintain it.

April 12, 2019. Plaintiff filed the First Amended Complaint ("FAC") on April 22, 2019 and added EnterMedia as a defendant in that amended pleading.

### C.  Service Upon EnterMedia.

On April 30, 2019, plaintiff served the FAC on EnterMedia at the offices of Pondanet, by serving Cathrina Lim, who was the only employee on the premises at that time. William Caruso, who served the papers, asked Ms. Lim if Lee was at the premises, and Ms. Lim said he was not. Caruso then asked Ms. Lim if Mr. Ahn, the general manager, was at the premises, and Ms. Lim said he was not. Caruso saw no one else at the small office of Pondanet except Ms. Lim, explained to her what the papers were, and handed them to her. Declaration of William Caruso, at ¶¶ 2-4.

### D.  The Facts Establishing Pondanet as the General Manager and/or Managing or General Agent of EnterMedia in California.

Plaintiff maintains that Pondanet is the "general manager" of EnterMedia, based upon the following facts:

- On its own website (www.entermedia-us.com), EnterMedia states that "**EnterMedia's** branch office is currently located in California. The branch office is being managed by **Pondanet, Inc**., which has been in business since 2002. **Pondanet, Inc.** is responsible for all inquiries regarding distribution, support, and sales of MagicSing products within the United States. All consumers must directly contact **Pondanet, Inc.**" (bold and underlining in original). Declaration of Evan S. Cohen, Exhibit A.[3]

- Likewise, on Pondanet's website (www.uskaraoke.com), Pondanet states that "US Karaoke [a tradename used by Pondanet] is *the official* Magic

---

[3] EnterMedia asserts that the website identified is "outdated" and no longer in use. However, plaintiff's counsel found the website fully operational as late as mid-April 2019, and printed Exhibit A while viewing it. Cohen Decl., at ¶ 1. This fact raises the strong inference that the site was taken down merely to avoid detection, in preparation for this Motion. Other sites, also associated with defendants (and *still* operational), make the same statement. Cohen Decl., Exhibits B, C, and D.

Sing importer and distributor in the United States." (emphasis added). Cohen Decl., Exhibit B.

- On the Facebook page of EnterMedia, in a posting dated October 17, 2017, it states that "Pondanet, Inc. is the branch office of EnterMedia Co. Ltd. that is responsible for any and all inquiries regarding any MagicSing products in USA. Please reach out to us by contacting Pondanet, Inc for any questions regarding MagicSing Karaoke equipment." Cohen Decl., Exhibit C.

- On another EnterMedia web page (www.eng.enter-tech.com), EnterMedia lists "ENTERMEDIA USA BRANCH OFFICE/PONDANET INC.," and the Anaheim address, and "Joseph B. Ahn/Manager." Cohen Decl., Exhibit D.

- While defendant Lee, president of Pondanet, testified that EnterMedia has many other distributors, he fails to name any of them. The EnterMedia websites fail to mention any of them, and Pondanet is the *only* American company listed. Any testimony from any officer or competent witness on behalf of EnterMedia is noticeably absent from EnterMedia's motion.

- The graphics of the EnterMedia and Pondanet Apps are identical; this infers that the two companies coordinate the delivery of musical content and App graphics and logistics. No other US company has, to plaintiff's knowledge, been provided with EnterMedia's proprietary App software. Cohen Decl., Exhibits E and F.

### III. THE MOTION TO QUASH SHOULD BE DENIED.

#### A. EnterMedia Was Properly Served Under California Law.

California law permits service on a foreign corporation by service on a "general manager in this state." Cal. Corp. Code § 2110. That Pondanet qualifies as a "general manager in this state" for EnterMedia is apparent from a review of the evidence, and

the California and federal cases construing that term.

Contrary to the suggestion of EnterMedia, the term "general manager" is not confined to a company that has a "corporate affiliation or ownership interest" in the managed company, nor does the general manager have to be the "exclusive distributor" of the managed company. EnterMedia disingenuously implies that *Thomas v. Takeda Pharm. USA, Inc.,* No. 116CV01566LJOEPG, 2017 WL 2214956 (E.D. Cal. May 19, 2017) held that a general manager and the managed company must be in some sort of "parent and subsidiary" relationship, when, in fact, the case does not so hold.

There is no requirement that a general agent in California be a subsidiary. *Paneno v. Centres for Acad. Programmes Abroad Ltd.,* 118 Cal. App. 4th 1447, 1456 (2004) ("CAPA-UK and CAPA-USA admittedly do not have a parent-subsidiary relationship. However. as CAPA-UK candidly professes, 'CAPA-USA functions as the United States sales, marketing, and pre-departure administration arm for CAPA-UK in the provision of international educational programs.' Without CAPA-USA performing in that capacity, CAPA-UK would have had to handle such activities itself. As such, CAPA-USA performs a function compatible with, and assists CAPA-UK in the pursuit of, CAPA-UK's business.") The same can be said of the services that Pondanet provides to EnterMedia.[4]

The seminal decision of the California Supreme Court in *Cosper v. Smith & Wesson Arms Co.,* 53 Cal. 2d 77 (1959), is instructive and dispositive. There, defendant corporation (Smith & Wesson) did not reside in California, had no physical presence in California, and employed no agents, salesmen, or other employees in

---

[4] Plaintiff has not had the benefit of discovery to explore the exact role that Pondanet plays for EnterMedia. *See* Section III.E., below. In fact, plaintiff propounded discovery some time ago, but Pondanet has requested continuances of the deadlines. It also failed to provide any documents in its Initial Disclosures, claiming a protective order was necessary. Then it refused to draft one. Cohen Decl., at ¶ 6. It is inequitable for Pondanet to complain about information "from old web sites," when it has completely failed to provide *any* requested information to plaintiff.

California. *Id.* at 80. Nevertheless, a local sporting goods sales company (Lookabaugh) acted as defendant's "manufacturer's representative" promoting, on a "non-exclusive basis," the sale of Smith & Wesson products on the West Coast. A plaintiff injured by an allegedly defective handgun manufactured by Smith & Wesson sued in California and served Smith & Wesson by serving the sporting goods sales company. Smith & Wesson moved to quash, submitting evidence that it "has no financial interest in the Lookabaugh Company nor any control over this company or its employees; that Lookabaugh Company buys its own samples and 'no help or assistance is given them by Smith and Wesson, Inc., except such advertising material as is furnished by Smith and Wesson, Inc., to the general jobbing trade throughout the world.'" *Cosper*, *supra*, 53 Cal. 2d at 80-81. The trial court quashed service. The Supreme Court reversed, finding that the relationship was "of sufficient character and rank to make it reasonably certain" that Smith and Wesson would be apprised of service of process." *Id.* at 83. This was the holding, even though Lookabaugh was a non-exclusive sales distributor. Indeed, Pondanet is charged with a much *bigger* role for EnterMedia: acting as its *sole* liaison with consumers, not just for Orange County or California, but as "the official" EnterMedia distributor for the entire United States.

### B. The Federal Courts Follow *Cosper* and California Law.

Because Rule 4(e)(l) permits service in any manner recognized by the forum state, federal district courts in California regularly follow *Cosper*.

"A general manager has been interpreted to 'include[] any agent of the corporation 'of sufficient character and rank to make it reasonably certain that defendant will be apprised of the service made.'" *Brighton Collectibles, Inc. v. Winston Brands, Inc.,* No. 11CV2191-GPC WMC, 2013 WL 394060, at *6 (S.D. Cal. Jan. 30, 2013), citing *Gibble v. Car-Lene Research, Inc.*, 67 Cal. App. 4th 295, 313 (1998) (quoting *Eclipse Fuel Eng'g Co. v. Superior Court*, 148 Cal. App. 2d 736, 745-46 (1957).

"Service of process under Rule 4 is not limited solely to officially designated

officers, managing agents, or agents appointed by law for the receipt of process." *Direct Mail Spec. v. Eclat Computerized Tech*, 840 F.2d 685, 688 (9th Cir. 1988). "General managers may be domestic distributors, salesmen or advertisers, or customer service liaisons of foreign manufacturers even if the foreign-domestic relationship is 'casual' or 'non-exclusive' as long as the domestic entity provides the foreign entity an open channel for the regular flow of business from the foreign entity into California." *Brighton Collectibles*, at *6 (citing *Khachatryan v. Toyota Motor Sales, USA, Inc.*, 578 F. Supp. 2d 1224, 1226 (C.D. Cal. 2008)).

### C. Application of the California and Federal Cases Establishes that Pondanet Is a "Managing Agent" for EnterMedia.

The above-cited cases establish that Pondanet operates as a "general manager in this state" for EnterMedia under Corporations Code § 2110. According to the facts presented, gathered even without the benefit of discovery, Pondanet's role in EnterMedia's United States business is crucial. EnterMedia has *one* branch office in the United States, and it is managed by Pondanet. Pondanet is the "official" US distributor for EnterMedia. All US consumers "must" contact Pondanet – and only Pondanet – for product inquiries and problems. This close relationship makes it "reasonably certain" that if Pondanet is served with process, EnterMedia would be apprised of that fact. And, this is exactly what happened here.

### D. Plaintiff Also Properly Effected Service Upon EnterMedia Under Rule 4(h).

To deny this motion, the Court need look no further than the California law discussed above because service effective under California law is all that is required by Rule 4(e). But service is also effective under Federal Rule of Civil Procedure 4(h)(1)(B), which states that a foreign corporation must be served by "delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process...." Fed. R. Civ. P. 4(h)(1)(B).

OPPOSITION TO DEFENDANT ENTERMEDIA CO., LTD.'S MOTION TO QUASH
7

According to the Ninth Circuit:

> Despite the language of the Rule, service of process is not limited solely to officially designated officers, managing agents, or agents appointed by law for the receipt of process. The rules are to be applied in a manner that will best effectuate their purpose of giving the defendant adequate notice. Thus, the service can be made "upon a representative so integrated with the organization that he will know what to do with the papers. Generally, service is sufficient when made upon an individual who stands in such a position as to render it fair, reasonable and just to imply the authority on his part to receive service. Generally, [t]he determination of whether a given individual is a 'managing or general agent' depends on a factual analysis of that person's authority within the organization.

*Direct Mail Spec. v. Eclat Computerized Tech*, 840 F.2d 685, 688 (9th Cir. 1988). Although EnterMedia claims that the service on Cathrina Lim, as the person in charge of the business premises of Pondanet on the day of service, was ineffective because Ms. Lim was the receptionist and a "clerical worker," in *Direct Mail Specialists*, *supra*, the Ninth Circuit held that that service on a receptionist *was* sufficient where she was "the only employee in the office when the process server arrived, demonstrating that more than minimal responsibility was assigned to her." *Id.* at 689.

Such service was "reasonably calculated" to apprise EnterMedia of the pendency of this action and its obligation to respond to it. EnterMedia makes unsupported factual allegations that Ms. Lim somehow would not know what to do with the papers, or possibly did not tell her employer (Pondanet) that a process server

had handed her legal papers.[5]

Further, whether a party has been properly served under Rule 4 is to be given a "liberal and flexible construction." *Borzeka v. Heckler*, 739 F.2d 444, 447 (9th Cir. 1984). "Substantial compliance" with Rule 4 is sufficient. *Travelers Cas. & Sur. Co. of Am. v. Brenneke*, 551 F.3d 1132, 1135-37 (9th Cir. 2009).

### E. Alternative Request for Discovery.

Plaintiff believes that the evidence set forth above establishes that it has properly effected service on EnterMedia by service on Pondanet, a "general manager" or a "managing or general agent" (or both). To the extent the Court disagrees, plaintiff alternatively requests the opportunity to conduct limited discovery concerning the relationship between EnterMedia and Pondanet, including the deposition of defendant Lee.

The court has the authority to allow such discovery. *Blair v. City of Worcester*, 522 F.3d 105, 111 (1st Cir. 2008). "[T]he threshold showing that a plaintiff must present to the district court to merit limited discovery is relatively low." *Id.* at 112. In *Manchester v. Sivantos GMBH,* No. 217CV05309ODWJEMX, 2018 WL 587849 (C.D. Cal. Jan. 29, 2018), Judge Wright of this district granted a motion to quash, but granted limited discovery to explore the relationship between the two companies. The court stated that several factors "lead the Court to believe that, provided the opportunity, Manchester could likely establish that Sivantos, Inc. is Sivantos GMBH's "general manager" for purposes of service under California law." *Id.* at *8 (citing *Blair, supra,* 522 F.3d 105 (""[W]here a plaintiff can demonstrate the existence of a plausible factual disagreement or ambiguity, our jurisprudence favors permitting the litigants the opportunity to flesh out the record.").

---

[5] In his declaration, defendant Lee speculates, without foundation, that "I understand Ms. Lim did not give actual notice of the summons to Entermedia." ¶ 6. However, this speculation is irrelevant; the issue is not whether Ms. Lim gave notice to EnterMedia; the issue is whether Ms. Lim gave the papers to her superiors *at Pondanet,* which has a close relationship with EnterMedia.

Plaintiff has already served written discovery upon Pondanet seeking facts about its relationship to EnterMedia.[6] Cohen Decl., at ¶ 6. Plaintiff expects responses to this discovery on July 3, 2019. Plaintiff has also set the deposition of defendant Lee, as well as Pondanet's General Manager Ahn, for July 17, 2019. Cohen Decl., at ¶ 7. Plaintiff believes that, if permitted to conduct limited discovery, it would further establish that Pondanet acts in such a capacity as to qualify it as a general manager and/or a managing or general agent for EnterMedia under California and federal law. It, therefore, requests that, if the Court is inclined to grant the motion, it first permit plaintiff to take discovery limited to this issue.

## IV. CONCLUSION

Pondanet and EnterMedia have a close relationship, despite EnterMedia's efforts to downplay the words and statements that EnterMedia and Pondanet have already publicly made. Based on those facts, and the constant corporate contact between the two companies, it is "reasonably certain" that service on Pondanet would result in EnterMedia having prompt notice of the service of the FAC. And, according to Ninth Circuit precedent, service on Cathrina Lim, on behalf of Pondanet, was valid.

Neither Pondanet nor EnterMedia have any license from plaintiff that would allow them to engage in any of the uses of the copyrighted works in defendants' karaoke streaming Apps. EnterMedia seeks to delay this reality for as long as possible and had brought this motion to facilitate that delay. It should be denied.

Dated: June 24, 2018            */s/ Evan S. Cohen*
                                Evan S. Cohen

                                Attorney for Plaintiff ELOHIM EPF USA, INC.

---

[6] In cases of this nature, it is certainly not uncommon for a plaintiff to rely on the non-hearsay information set forth on public websites to determine the relationship between two companies. EnterMedia and Pondanet make a flimsy assertion that this information is old and incorrect. Nevertheless, if this is a genuine dispute regarding those facts, discovery is required to find the facts.