YURI MIKULKA (State Bar No. 185926)
Email: yuri.mikulka@alston.com
H. JAMES ABE (State Bar No. 265534)
Email: james.abe@alston.com
**ALSTON & BIRD LLP**
333 South Hope Street, 16th Floor
Los Angeles, California 90071
Telephone: (213) 576-1000
Facsimile: (213) 576-1100

Attorneys for Defendant
***EnterMedia Co., Ltd.***

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ELOHIM EPF USA, INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>PONDANET, INC., a Delaware corporation d/b/a US Karaoke; ENTERMEDIA CO., LTD., a corporation organized under the laws of the Republic of Korea; SUNG DOO LEE, an individual; and DOES 1-10, inclusive,<br><br>Defendants. | Case No. 8:19-cv-00349-SVW (KESx)<br><br>Hon. Stephen V. Wilson<br><br>**REPLY MEMORANDUM IN SUPPORT OF DEFENDANT ENTERMEDIA CO., LTD.'S MOTION TO QUASH SUMMONS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(5)**<br><br>*[Declaration of Sung D. Lee filed concurrently herewith]*<br><br>Complaint Filed: February 22, 2019<br>Hearing Date: _July 15, 2019<br>Department: 10A<br>Time: 1:30 p.m. |

## REPLY MEMORANDUM

### I. INTRODUCTION

Plaintiff Elohim EPF USA, Inc. ("Elohim") insists that it can properly serve process on EnterMedia Co., Ltd., ("EnterMedia") a South Korean entity with no offices or employees in the United States, by dropping off untranslated papers with the receptionist of a non-exclusive distributor. Elohim's arguments must be rejected and service of the summons on EnterMedia must be quashed because Elohim premises its opposition on a set of facts that does not exist in this case, and because accepting Elohim's position would lead to untenable results.

First and foremost, Elohim fails to carry its burden to show proper service because all of the factual premises of its arguments are incorrect:

- Elohim argues that Pondanet is EnterMedia's exclusive distributor. In fact, Pondanet is simply one non-exclusive distributor. Other EnterMedia distributors include Mega Imports (dba Magic Mic Store), Creavention, Inc. (dba Magic Sing Store), and PAX Global.
- Elohim argues that Pondanet is responsible for all inquiries regarding Magic Sing equipment – but Mega Imports, Inc. (d/b/a/ Magic Mic Store) handles inquiries and performs maintenance on machines, and Creavention, Inc. repairs microphones.
- Elohim argues that the EnterMedia website states that Pondanet is Entermedia's "branch office." That information is inaccurate and that webpage is no longer active.
- Elohim also proclaims the MyStage and MagicSing apps are "identical," but Elohim's own evidence shows differences between the apps, and in any event similarity is expected since both apps work with Magic Sing machines.
- Elohim argues that the receptionist it served was in charge of the office, but by his own declaration the server made no attempt to determine the scope of her role or whether service could be made on anyone qualified to accept it.

From these flimsy premises, Elohim assumes that Pondanet and EnterMedia have a close relationship sufficient to make Pondanet EnterMedia's general manager. But no court has held that a mere buyer/seller relationship, without more extensive involvement in design, manufacturing, or marketing, fulfills this requirement. And no court has found service to be effective on a clerical employee on such a scant showing.

Elohim's arguments must also be rejected because they would lead to untenable results. Accepting Elohim's position means that any foreign company could be served through any of its distributors, completely eviscerating the protections of the Hague Convention and of California law. For all of these reasons the Court should grant EnterMedia's motion to quash.

## II. ELOHIM'S OPPOSITION IS BASED ON FALSE PREMISES AND SHOULD BE REJECTED – PONDANET'S BUYER-SELLER RELATIONSHIP WITH ENTERMEDIA DOES NOT MAKE IT A GENERAL MANAGER

### A. Elohim Fails to Carry its Burden to Show Proper Service Because its Opposition is Based on False Premises

The most glaring defect in Elohim's opposition is that it is premised on a set of facts that does not exist in this case. For example, Elohim asserts that Pondanet is the only distributor for EnterMedia and sole customer contact in the United States. (Dkt. No. 28 at 7:11-19). Elohim's support for this sweeping claim are statements on the EnterMedia websites (www.entermedia-us.com and www.eng.enter-tech.com) – but neither of those websites are currently active, and a sworn affidavit from the President of Pondanet explained that this information was inaccurate. A Pondanet website (www.uskaraoke.com) also no longer states what Elohim says it does. That website accurately reflects that Pondanet is one of several EnterMedia distributors in the United States. (Declaration of Sung D. Lee ("Lee Decl.") at ¶ 3.). Elohim also cites a Facebook post. (Dkt. No. 28 at 4:2-9). That information is also inaccurate, as

demonstrated below.

Elohim faults EnterMedia for not explicitly identifying other distributors in its Motion. Aside from the fact that EnterMedia did provide sworn testimony as to Pondanet's non-exclusive status and the fact that Elohim bears the burden of proof to show that service is proper (*Brockmeyer v. May*, 383 F.3d 798, 801 (9th Cir. 2004)), a simple Google search is all it takes to identify several other EnterMedia distributors in the United States.

Mega Imports, Inc. (dba Magic Mic Store), for example, is a distributor based in Hawaii that states on its website (available at https://www.magicmicstore.com/aboutus.asp) that it is "the largest Magic Sing, MicroKY, and MyStage authorized distributor and reseller in the U.S." (Lee Decl., ¶ 4). The Magic Mic Store website states that the distributor provides troubleshooting and service for Magic Sing products. (*Id.*) Another distributor is Creavention, Inc. (dba Magic Sing Store) (*Id.*). On the "About Us" page on the website of Magic Sing Store (at https://magicsingstore.com/customer-service/about/) the website states "We are an authorized retailer of Enter-Tech Magic Sing Karaoke microphones, accessories and song chips." (*Id.*) The "Contact Us" (at https://magicsingstore.com/customer-service/contact/) page states that Magic Sing Store repairs microphones. (*Id.*) PAX Global is yet another distributor of EnterMedia products. (*Id.*) Thus, Elohim's premise that Pondanet is the exclusive distributor and sole customer contact for EnterMedia in the United States is demonstrably false.

Elohim's only other evidence cited regarding the relationship between EnterMedia and Pondanet is an alleged similarity between the user interfaces in the MagicSing and MyStage apps. (Dkt. No. 28 at 4:19-23). But Elohim's own evidence shows that the apps are not identical. The MagicSing app includes buttons in the bottom control panel that are not present in the MyStage App. (Compare Dkt. 28-1 at 17 with Dkt. 28-1 at 19). In any event, similarity between the apps is not surprising – by Elohim's own admission, both apps are compatible with EnterMedia's Magic Sing

karaoke machines. (Dkt. No. 17 at ¶¶ 22, 23, 25, 26). The similarity is attributable to the desire for interoperability. Elohim assumes without evidence that this similarity could only possibly mean that EnterMedia and Pondanet work together closely and continuously on the app. But this attorney argument cannot carry Elohim's burden of proof to show proper service. *See Groupion, LLC v. Groupon, Inc.*, 859 F. Supp. 2d 1067, 1074 fn. 3 (N.D. Cal. 2012) ("Attorney argument is not evidence.").

The kind of evidence Elohim presents has been deemed insufficient to show that a domestic distributor is the general manager of a foreign manufacturer. In *Thomas v. Takeda Pharms. United States, Inc.*, Case No. 1:16-cv-01566-LJO-EPG, 2017 U.S. Dist. LEXIS 76721, *12 (E.D. Cal. May 19, 2017) and *Manchester v. Sivantos GMBH*, Case No. 2:17-CV-05309-ODW (JEMx), 2018 U.S. Dist. LEXIS 14108, *21 (Jan. 29, 2018), the courts held that general statements on a company website are not enough to establish that a domestic distributor is a "general manager" of a foreign company for purposes of service of process, even where the distributor was a subsidiary. Elohim fails to address this authority in its opposition, other than to mischaracterize the holding in *Thomas* and EnterMedia's argument thereon. EnterMedia never argued that *Thomas* requires a parent-subsidiary relationship for a domestic distributor to be a general manager, as Elohim states. (Dkt. No. 28 at 5:2-9). EnterMedia's point is that there was a parent-subsidiary relationship in *Thomas* (and in *Manchester*), and in spite of that relationship (which suggests some closeness and cooperation between the companies, at least moreso than between completely independent entities) the domestic distributor was not the general manager of the foreign manufacturer. Elohim's argument here is even weaker than the plaintiffs defending their service in *Thomas* and *Manchester* because there is no parent-subsidiary relationship between EnterMedia and Pondanet.

### B. Elohim's Own Authority Demonstrates the Significant Showing Required to Prove General Manager Status and Underscores Elohim's Failure to do so

Elohim relies on the case *Cosper v. Smith & Wesson Arms Co.*, 53 Cal. 2d 77 (1959), and the core holding of that case is that a domestic representative must share a close relationship with the nonresident manufacturer to be considered its general manager. In *Cosper*, the plaintiff made an "extended showing" of the deeply entwined and continuous relation between the manufacturer's representative Lookabaugh and the manufacturer Smith & Wesson, involving Lookabaugh "servicing dealer accounts, investigating and recommending prospective dealers to Smith and Wesson, arranging publicity, distributing advertising, and handling and reporting on complaints concerning defects in Smith and Wesson's products." *Id*. at 81. This showing was established through witness testimony in several depositions. *Id*. Elohim proclaims that *Cosper* is dispositive of the current motion. But *Cosper* itself cautioned that the general manager inquiry was fact-intensive and made on a case-by-case basis. *See Cosper*, 53 Cal. 2d at 83 ("Whether in any given case, the person served may properly be regarded as within the concept of the statute depends on the particular facts involved."). And the facts in *Cosper* are markedly different from those here. Lookabaugh's investigation and recommendation of dealers on a commission basis necessarily required continuous and active communication and cooperation between Lookabaugh and Smith & Wesson. Lookabaugh distributed advertising and played a role in quality assurance. Pondanet, in contrast, merely sells EnterMedia's products.

Subsequent cases have stressed the importance of the close relationship as the key to *Cosper's* holding. These cases highlight the shortcomings of Elohim's showing. For example, in *Brighton Collectibles, Inc. v. Winston Brands, Inc*., Case No. 11cv2191-GPC(WMC), 2013 U.S. Dist. LEXIS 12694, *20 (S.D. Cal. Jan. 30, 2013), the court found that the United States subsidiary of a Hong Kong company had a sufficiently close relationship to be considered the general manager because a press release jointly released by both companies described how the subsidiary was created to "handle sales and logistics and provide support to the design and manufacturing operation in Hong Kong" and how it was "[t]he U.S. branch of the business." *Id.* at

*20. *See also id.* at *23 (stressing the importance of the "close relationship" in the general manager inquiry). In *Eclipse Fuel Engineering Co. v. Superior Court of San Francisco*, 148 Cal. App. 2d 736, 744 (1957), the court held that an exclusive sales representative was a general manager of an out-of-state manufacturer where a contract detailed the exlusive relationship, where the representative used the name of the manufacturer (Eclipse) in connection with his own business (like in the local phone book), where the representative advertised, assembled, installed, and serviced the equipment, and interfaced with customers and the manufacturer concerning defective products. *Id.* at 741-44. In *Khachatryan v. Toyota Motor Sales, U.S.A., Inc.*, 578 F. Supp. 2d 1224, 1227 (C.D. Cal. 2008) the court held that Japanese car manufacturer Toyota's United States subsidiary was Toyota Japan's general manager in California, and focused on the parent-subsidiary relationship, Toyota America's creation and distribution of advertising using Toyota Japan's marks, and where the subsidiary gave the foreign parent actual notice of the summons.

All of Elohim's authorities demonstrate that an entwined, continuous relationship is required for general manager status, which highlights the shortcomings of Elohim's arguments. Unlike *Brighton*, Pondanet does not handle logistics for EnterMedia and Pondanet has no input whatsoever in the design or manufacturing process. (Dkt. No. 27-1, Lee Decl., ¶ 5). Unlike *Eclipse*, Pondanet is a non-exclusive distributor that does not assemble, install, and service EnterMedia products. Unlike *Khachatryan*, Pondanet is not Entermedia's wholly-owned subsidiary.[1] EnterMedia's and Pondanet's relationship is limited to that of seller and buyer, which does not make Pondanet EnterMedia's general manager for purposes of service of process. Thus, Elohim fails to carry its burden to show that service of process was sufficient and the

[1] Elohim downplays the important of the parent-subsidiary relationship (and its absence here), but that has been a critical fact in finding general manager status in many cases. *See Falco v. Nissan N. Am., Inc.*, 987 F. Supp. 2d 1071, 1077 (C.D. Cal. 2013) (stressing that the closeness of the parent-subsidiary relationship was key to the general manager finding in that case and many others, including *Khachatryan*).

motion to quash must be granted.

**C. <u>Elohim's Other Authorities are Inapposite</u>**

Elohim also relies on *Paneno v. Centres for Academic Programmes Abroad Ltd*., 118 Cal. App. 4th 1447, 1456 (2004) for the proposition that there need not be a parent-subsidiary relationship for a domestic company to be the general manager of a foreign entity. (Dkt. No. 28 at 5:10-19). But that's not what *Paneno* stands for – the case makes no holding on what it takes to be a general manager at all. *Paneno* was concerned exclusively with whether the foreign defendant, CAPA-UK, had sufficient contacts with California to be subject to personal jurisdiction of California courts. *Id*. at 1457. ("Under these circumstances, for purposes of this motion only, we conclude that sufficient facts exist to support the imposition of general jurisdiction over CAPA-UK."). In any event, the relationship between CAPA-UK and the domestic entity CAPA-USA in *Paneno* was far more extensive than the relationship between EnterMedia and Pondanet here. There, CAPA-UK and CAPA-USA had identical boards of directors, representatives of CAPA-UK traveled to California to meet with CAPA-USA several times per year, and the two companies entered into complementary contracts to provide study abroad programs (CAPA-USA contracted with students, CAPA-UK contracted with housing abroad for those students). *Id*. at 1451-52. Other authorities are simply inapposite. *Gibble v. Car-Lene Research, Inc*., 67 Cal. App. 4th 295, 300 (1998) held that a California corporation was validly served where the plaintiff personally served the regional office manager, even though the corporation had been suspended by the secretary of state for failure to file tax returns.

**D. <u>Leaving Papers with the Pondanet Receptionist was not Sufficient Service on EnterMedia</u>**

Even if the Court were to hold that Pondanet was EnterMedia's general manager, which it is not, service should still be quashed because leaving the summons with a clerical employee was insufficient. Federal Rule of Civil Procedure 4(h)(1)(B) allows a plaintiff to effect service on a corporation's "officer" or "managing or

general agent." The receptionist at Pondanet is none of those things for EnterMedia. Once again, Elohim's own authority highlights the insufficiency of its efforts.

In *Direct Mail Spec. v. Eclat Computerized Tech,* 840 F.2d 685, 688 (9th Cir. 1988), the court held that service on a receptionist was sufficient where she was the only person present in a small office shared by two companies (both of which were involved in the business transactions at issue in the action). *Id.* In that case, when the process server asked to talk with the person in charge of the office, the receptionist responded that she was the only one there. *Id.* at 687. Critical to the court's analysis in *Direct Mail Specialists* was the fact that the president of the defendant called the president of the plaintiff about the summons the very next day – proving that service on the receptionist did indeed give the defendant actal notice of the summons. *Id.* at 689.

Elohim's supporting declaration of William Caruso (Dkt. No. 28-2) reveals a much different scenario than in *Direct Mail Specialists.* In the present case, Mr. Caruso states that he arrived at the Pondanet office at 11:25 a.m., and he asked the receptionist whether Mr. Sung Lee or Mr. Joseph Ahn was there. (Dkt. No. 28-2 at ¶ 3). The receptionist, Ms. Cathrina Lim, responded that they were not. (*Id.*) Mr. Caruso does not describe any further investigation, and he left the papers with Ms. Lim. (*Id.* ¶ 4). Unlike *Direct Mail Specialists*, where the server confirmed that the receptionist was the only person there, Mr. Caruso did not confirm that nobody else was at the office. Instead, he arrived around lunchtime, asked only about two specific people, and left the papers with the receptionist. He did not inquire whether there was anyone else at office, or whether Mr. Sung or Mr. Ahn would return shortly, perhaps later that day or the next. Mr. Caruso made no apparent effort to determine the scope of Ms. Lim's duties, or whether she knew what to do with the summons. There is no indication that Mr. Caruso inquired as to Ms. Lim's title, whether she was a temporary or permanent employee, or even her last name. And unlike the fact that was critical in *Direct Mail Specialists*, Ms. Lim did not give actual notice to EnterMedia of the

summons.[2] Elohim's service on Ms. Lim was insufficient under Federal Rule of Civil Procedure 4(h) and the service of summons must be quashed.

**E. Elohim's Position Would Eviscerate the Hague Convention and Lead to Untenable Results**

In addition to Elohim's failure to carry its evidentiary burden to show that Pondanet is EnterMedia's general manager, and to show that service on a clerical employee was sufficient, the Court should also reject Elohim's position because it eviscerates the Hague Convention and leads to untenable results.

Elohim's only mention of the proper method for serving a foreign defendant with process – the Hague Convention – is to say that it need not abide by that procedure because it followed California law. (Dkt. No. 28 at 1:26-28) (citing *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 707-08 (1988)). The actual holding of *Volkswagenwerk* is that "[w]here service on a domestic agent is valid and complete under both state law and the Due Process Clause" additional requirements of the Hague Convention need not be followed. *Volkswagenwerk*, 486 U.S. at 707. In that case, the plaintiff properly served the foreign corporation's managing agent (a wholly-owned United States subsidiary), and the foreign defendant expressly conceded that service was proper under Illinois law.

Here, Elohim's attempted service on EnterMedia through Pondanet is not proper under California law for the reasons discussed above. Moreover, "California Code of Civil Procedure Section 413.10(c) provides that its rules outlining methods for serving individuals outside of the United States, are 'subject to the provisions of the Convention on the 'Service Abroad of Judicial and Extrajudicial Documents' in Civil or Commercial Matters (Hague Service Convention).'" *Baek v. Radish Media, Inc.*, Case No. CV 18-7475-RSWL-RAO, 2018 U.S. Dist. LEXIS 196014, *6 (C.D.

[2] Elohim somehow says that EnterMedia's statements about the scope of Ms. Lim's duties are "unsupported factual allegations" even though EnterMedia provided a sworn affidavit by the President of Pondanet as support.

Cal. Nov. 16, 2018). In *Baek*, the attempted service was quashed because the plaintiff did not abide by the requirements of the Hague Convention with respect to South Korea, which requires that "a plaintiff must serve a translated version of the Complaint through South Korea's designated Central Authority." *Id*. at *5. Elohim did not abide those requirements here either, so service must be quashed.

If the Court accepted Elohim's position it could lead to untenable results. Any plaintiff could bypass the protections of the Hague Convention and serve foreign defendants by visiting a non-exclusive distributor and leaving papers there. A plaintiff could stroll into a Wal-Mart regional office to "serve" a Swiss watch manufacturer for a design defect case. A Mexican avocado grower could be served by leaving papers at an office for Whole Foods. A Chinese toy manufacturer could be served by leaving a summons at a Target store. Even though all that exists in these examples is a non-exclusive buyer-seller relationship that is enough under EnterMedia's interpretation of the law.

**F. <u>The Court Should Deny Elohim's Alternative Request for Discovery</u>**

Elohim's alternative request for discovery should also be denied. There is no need to subject EnterMedia, not yet even a proper party to this case, to discovery. If Elohim wishes to add EnterMedia to the lawsuit, it should simply follow the well established procedures for doing so in the Hague Convention. Elohim has not stated that it cannot serve EnterMedia via the Hague Convention.

Or, if through the regular course of discovery Elohim discovers evidence of a general manager relationship between EnterMedia and Pondanet it could thereafter seek leave to amend its complaint accordingly. *See* Fed. R. Civ. Proc. 15(a). There are proper procedures for doing everything that Elohim seeks to do here. Elohim should be held to those procedures.

///

///

///

## III. CONCLUSION

For the foregoing reasons, EnterMedia respectfully requests that this Court quash Elohim's insufficient service of the summons on EnterMedia.

DATED: July 1, 2019

**ALSTON & BIRD LLP**

By: */s/ Yuri Mikulka*
Yuri Mikulka
Attorneys for Defendant
***EnterMedia Co., Ltd.***

**CERTIFICATE OF SERVICE**

I, Melony Hempfling, certify and declare as follows:

1. I am over the age of 18 and not a party to the within action.

2. My business address is Alston & Bird LLP, 333 South Hope Street, Sixteenth Floor, Los Angeles, CA 90071.

3. On **July 1, 2019**, I caused a copy of the **REPLY MEMORANDUM IN SUPPORT OF DEFENDANT ENTERMEDIA CO., LTD.'S MOTION TO QUASH SUMMONS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(5)** to be served via email on the following attorneys representing Plaintiff ELOHIM EPF USA, INC.:

EVAN S. COHEN, ESQ. (SBN 119601)
esc@manifesto.com
1180 South Beverly Drive, Suite 510
Los Angeles, CA 90035-1157
Tel: (310) 556-9800

BYRNES HIRSCH P.C.
Bridget B. Hirsch (SBN 257015)
bridget@byrneshirsch.com
2272 Colorado Blvd., #1152
Los Angeles, CA 90041
Tel: (323) 387-3413

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on **July 1, 2019** at Los Angeles, California.

*/s/ Melony Hempfling*
Melony Hempfling